**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EDWARD K.,[1]** | : | |
| *Plaintiff,* | : | **CIVIL ACTION** |
| **v.** | : | **No. 25-55** |
| | : | |
| **FRANK BISIGNANO,** | : | |
| **Commissioner of Social Security,** | : | |
| *Defendant.* | : | |

**MEMORANDUM OPINION**

**HON. JOSÉ RAÚL ARTEAGA** **July 23, 2026**
**United States Magistrate Judge[2]**

The Commissioner of the Social Security Administration, Frank Bisignano, through an Administrative Law Judge ("ALJ"), denied Edward K.'s application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f, finding that he was not disabled from June 14, 2023, through August 22, 2024. (Tr. 14-31.) Edward K. seeks reversal and remand pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), arguing that substantial evidence does not support the ALJ's decision

[1] The Court refers to Edward K. solely by his first name and initials in accordance with this Court's standing order. *See* Standing Order, *In re: Party Identification in Social Security Cases* (E.D. Pa. June 10, 2024), https://www.paed.uscourts.gov/sites/paed/files/documents/locrules/standord/SO_pty-id-ss.pdf (last visited June 22, 2026).

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (*See* ECF 7.)

because she failed to properly evaluate the medical opinions and prior administrative medical findings. (ECF 9 at 2-3.) In response, the Commissioner argues that the ALJ appropriately evaluated the medical opinions and prior administrative medical findings and that substantial evidence supports her decision. (ECF 10 at 2, 5.)

After careful review of the record, Edward K.'s request for review is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

Edward K. applied for SSI in June 2023, alleging disability beginning March 9, 2016, due to post-traumatic stress disorder, depression, and anxiety. (Tr. 54, 151-53.) At the time, he was under fifty-years-old, or a "younger person" for Social Security purposes. (*See* Tr. 54.) *See* 20 C.F.R. § 416.963(c).

The state agency denied Edward K.'s claim initially and upon reconsideration. (Tr. 54, 62.) Edward K. then filed a written request for a hearing. (Tr. 89-92.) He and a vocational expert ("VE") testified before an ALJ in August 2024. (Tr. 32-49.) The ALJ denied Edward K.'s benefits application after the hearing. (Tr. 17-27.).

The ALJ determined that Edward K. had not engaged in substantial gainful activity[3] since his application date. (Tr. 19.) According to the ALJ, Edward K. suffered from the following severe impairments: major depressive disorder, post-traumatic stress

[3] The regulations define "substantial gainful activity" as work activity that is both substantial and gainful. *See* 20 C.F.R. §§ 416.972(a)-(b). The Commissioner generally presumes individuals have demonstrated the ability to engage in substantial gainful activity if they have earnings above a level set out in the regulations. *See* 20 C.F.R. §§ 416.974, 416.975.

disorder, generalized anxiety disorder, and adjustment disorder. (*Id.*) She concluded that these impairments did not meet or medically equal the severity of one of the impairments listed in the regulations when considered alone or in tandem.[4] (Tr. 20.)

To determine Edward K.'s residual functional capacity ("RFC"),[5] the ALJ analyzed the record. (Tr. 21-26, 28-31.) Among the materials she reviewed were: (1) a May 30, 2023 treatment plan (Tr. 253-59 (Ex. B1F)); (2) an updated treatment plan and assessments from May 30, 2023, to November 14, 2023 (Tr. 314-32 (Ex. B4F)); and (3) treatment notes from Karen Paster, CRNP from November 14, 2023 to July 11, 2024. (Tr. 333-72 (Ex. B5F).) The ALJ also weighed medical opinions and prior administrative medical findings including: (1) Karen Louise Plowman, Psy.D.'s August 17, 2023 disability determination (Tr. 55-61 (Ex. B3A)); (2) John David Gavazzi, Psy.D.'s December 12, 2023 disability determination (Tr. 63-69 (Ex. B5A)); (3) Steven Mehl, Ph.D.'s August 10, 2023 consultative examination and medical source statement (Tr. 299-309 (Ex. B3F)); and (4) a July 28, 2024 mental impairment questionnaire from CRNP Paster. (Tr. 373-78 (Ex. B6F).) The ALJ also

[4] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 416.925-416.926 (noting that the listed impairments in Part 404 apply to claims under Part 416).

[5] RFC is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (*e.g.*, pain). 20 C.F.R. § 416.945(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* § 416.945(a)(2).

considered Edward K.'s (1) hearing testimony (Tr. 36-43), (2) initial function report[6] (Tr. 165-72 (Ex. B1E)), and (3) a July 24, 2023 function report in addition to his subjective complaints as documented in the medical evidence. (Tr. 189-96 (Ex. B5E).). Lastly, the ALJ evaluated the VE's testimony. (Tr. 44-48.)

"After careful consideration of the entire record," the ALJ determined that Edward K. had the RFC to perform a full range of work at all exertional levels subject to certain nonexertional limitations. (Tr. 21.) She then found that Edward K. had no past relevant work experience. (Tr. 26.) Considering his age, education, work experience, and RFC as well as the VE's testimony, the ALJ concluded that other jobs existed in significant numbers in the national economy that Edward K. could perform, such as store laborer, hand packager, non-postal mail clerk, and router. (Tr. 26-27.) Therefore, he was not disabled within the meaning of the Social Security Act. (Tr. 27.)

The Appeals Council rejected Edward K.'s request for review. (Tr. 1.) Thereafter, he filed this action seeking review of the Commissioner's final decision. (ECF 1.)

## II. LEGAL STANDARDS[7]

### A. The Social Security Administration's Five-Step Evaluation Process

Working through ALJs, the Commissioner follows a five-step evaluation process to determine whether a claimant is disabled under the Social Security Act. 20 C.F.R.

---

[6] Edward K. incorrectly identifies this function report as having been prepared on his birth date. It likely was completed between June and July 2023.

[7] The respective regulations governing claims for Disability Insurance Benefits, which can be found at 20 C.F.R. Part 404, and claims for SSI, which can be found at 20 C.F.R. Part 416 "are, as relevant here, not materially different." *Sims v. Apfel*, 530 U.S. 103,

§ 416.920(a). The Commissioner determines whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment[8]; (3) has impairment(s) that meet or medically equal a listed impairment; (4) has the capacity to do past relevant work, considering their RFC; and (5) is able to do any other work, considering their RFC, age, education, and work experience. *Id.*

The claimant bears the burden of proof on all steps, except step five. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010); *see also Zirnsak v. Colvin*, 777 F.3d 607, 611-12 (3d Cir. 2014) ("[D]uring steps two through four of the inquiry, the claimant *always* bears the burden . . . by a preponderance of the evidence . . . .") (emphasis added). At step five, "the Commissioner bears the burden of establishing the existence of jobs in the national economy that an individual with the claimant's impairments is capable of performing." *Id.* at 616; *see also Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001) (explaining that the Commissioner must account for the claimant's age, education, work experience, and RFC when establishing the availability of work the claimant can perform).

107 n.1 (2000). Because the test for determining whether a person is disabled "is the same" for either class of benefits, the Court may consider case law developed under either provision in reaching a decision. *See Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

[8] A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c).

### B. Mental Impairments Analysis

When mental impairments are alleged, the ALJ's evaluation includes additional inquiries. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 202 (3d Cir. 2019) (citing 20 C.F.R. § 416.920a(a)). The ALJ considers the claimant's degree of limitation in four broad functional areas: the "Paragraph B" criteria. *See id.* Specifically, the ALJ considers whether the claimant can (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage themself. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(A)(2)(b), (E). A five-point rating scale describes the degrees of limitation in the four areas: none, mild, moderate, marked, and extreme. *Id*. Pt. 404, Subpt. P, App'x 1, § 12.00(F). When considering a claimant's mental impairments, ALJs consider medical evidence, other evidence, and, to the extent that they are consistent with the other evidence, statements of the claimant and those who know them. *Id.* § 416.920a(c)(1); *id.* Pt. 404, Subpt. P, App'x 1 § 12.00(C).

The ALJ evaluates these criteria at step two to decide whether the claimant has any severe or non-severe medically determinable mental impairments and, if so, again at step three to determine whether the impairments meet or medically equal a listed impairment. *See id*. §§ 416.920a(a)-(b), (d); *Hess*, 931 F.3d at 202-03. To prove that their mental impairments meet or medically equal a listed impairment under Paragraph B, a claimant must show an extreme limitation in one area of mental functioning or a marked limitation in two areas. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(F)(2). If the claimant does not meet that burden, the ALJ must also consider whether the claimant has satisfied the

"Paragraph C" criteria.[9] If the claimant does not satisfy the Paragraph B or C criteria at step three, disability is not presumed, and the ALJ must incorporate all credibly established mental limitations into the claimant's RFC at step four. *See Hess*, 931 F.3d at 203, 209; *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

**C. Substantial Evidence and the ALJ's Burden of Articulation**

Any findings of fact made by an ALJ are reviewed under the deferential "substantial evidence" standard. 42 U.S.C. § 405(g). The Court must determine whether substantial evidence supports the Commissioner's finding that Edward K. was not disabled and whether the Commissioner, through the ALJ, correctly applied the relevant law. *Id.* In other words, the limited question before the Court is *not* whether Edward K. was disabled.

Courts review the Commissioner's factual findings to see if "substantial evidence" in the administrative record supports them.[10] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019); *see also* 42 U.S.C. § 405(g) (stating that factual findings supported by substantial evidence "shall be conclusive"). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept

---

[9] The Paragraph C criteria are met when a claimant has a "serious and persistent" mental disorder with medically documented history for at least two years. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 §§ 12.00(A)(2)(c), (G).

[10] Any legal issues the ALJ decides are subject to "plenary review." *See Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008).

as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation modified). It is "more than a mere scintilla but may be somewhat less than a preponderance of evidence." *Rutherford*, 399 F.3d at 552.

"The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Where substantial evidence supports the ALJ's findings of fact, courts may not "re-weigh the evidence or impose their own factual determinations." *Id.* at 359; *see also Fargnoli*, 247 F.3d at 38 (noting that reviewing courts must accept the ALJ's factual findings where there is substantial supporting evidence, even if they "would have decided the factual inquiry differently.") "The presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009); *see also Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) (holding that an "ALJ is entitled to weigh all evidence in making its finding," even where there is record evidence "suggesting a contrary conclusion").

When evaluating medical opinions and prior administrative medical findings, ALJs must "articulate how [they] considered" them and "how persuasive" they are. 20 C.F.R. §§ 416.920c(a)-(b). ALJs "must always discuss the two most important [persuasiveness] factors: supportability and consistency." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024); *see* 20 C.F.R. § 416.920c(b)(2). Supportability refers to the degree to which "a medical source has articulated support for the medical source's

own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Nolf v. Comm'r of Soc. Sec.*, No. 22-368, 2023 U.S. Dist. LEXIS 214838, at *1 n.1 (W.D. Pa. Dec. 4, 2023). However, an ALJ "need not reiterate the magic words 'support' and 'consistent' for each" medical source assessed in the determination. *Zaborowski*, 115 F.4th at 639. The ALJ need only "weave supportability and consistency throughout [the] analysis of which doctors were persuasive." *Id.*[11]

The ALJ's opinion need only include "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see also* 42 U.S.C. § 405(b)(1) (requiring an ALJ to state the "reason or reasons upon which [a denial of benefits] is based"). To decide whether an ALJ sufficiently developed the record, the ALJ's decision is read "as a whole." *Jones*, 364 F.3d at 505; *see also Fargnoli*, 247 F.3d at 42 (noting that an ALJ need not reference every relevant piece of evidence).

[11] It is worth noting that although Edward K.'s Brief and Reply seek to discredit the sufficiency of the ALJ's supportability and consistency findings, neither refers to *Zaborowski*, a decision which binds this Court's consideration of whether the ALJ adequately addressed these persuasiveness factors.

Plaintiff's counsel is reminded of his obligation to provide the Court with case citations that are up-to-date in light of ever-evolving law, even where such authority might be adverse. *See* Pa. R.P.C. 3.3(a)(2) (Candor Toward the Tribunal); *see also* Pa. R.P.C. 1.1 (Competence), cmt. 8 ("To maintain the requisite knowledge and skill, a lawyer should keep abreast of changes in the law and its practice . . . .").

Following review of the entire record on appeal, the Court can enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Edward K. bears the burden to explain how any "error to which he points could have made any difference" in the ALJ's determination. *Shinseki v. Sanders*, 556 U.S. 396, 409, 413 (2009). Remand is not required if it would not affect the outcome of the case. *Rutherford*, 399 F.3d at 553.

## III. DISCUSSION

Edward K. asserts that remand is required because the ALJ's medical opinion assessments were based on erroneous, lay reasoning that cannot be the basis for his RFC. (EFC 9 at 3, 11.) In his view, the ALJ's evaluations of Dr. Mehl's and CRNP Paster's medical opinions and Dr. Plowman's and Dr. Gavazzi's administrative medical findings are in conflict, rendering the ALJ's RFC determination unclear and impeding effective judicial review. (ECF 9 at 7-8.) In particular, he asserts that the ALJ failed to sufficiently explain supportability and consistency when evaluating which medical opinions to accept as persuasive regarding his Paragraph B criteria. (*Id.* at 2 and 3.) The Commissioner responds that the ALJ, as the sole determiner of the RFC, need not adopt any medical opinion, including that of a treating provider, and properly evaluated all medical evidence, including the supportability and consistency factors before concluding that Edward K. was not disabled. (ECF 10 at 2, 7-13.)

Edward K's arguments primarily concern the ALJ's evaluation of his degree of limitation when considering the Paragraph B criteria. *See* 20 C.F.R. Pt. 404, Subpt. P,

App'x 1 §§ 12.00(A)(2)(b), (E).[12] She analyzed the severity of his limitations in these areas at step three. (Tr. 20-21.) She concluded that Edward K. had "no more than mild limitation" in his ability to understand, remember, or apply information and moderate limitations in his abilities to interact with others, adapt or manage himself, and concentrate, persist, or maintain pace. (Tr. 20.) The ALJ expressly stated that she considered the Paragraph B limitations at step four. (Tr. 21 ("The following [RFC] assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis.").)

After considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as "the medical opinion(s) and prior administrative medical finding(s)," the ALJ concluded that Edward K. had the RFC to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: he is capable of understanding and performing simple work tasks that are not at an assembly line or production rate pace or involving any strict production quotas; capable of tolerating occasional interaction with supervisors and coworkers and no interaction with the general public; and capable of managing occasional changes in the work routine or work setting.

[12] Pertinent here, the regulations note that a claimant has "no limitation" when they are "able to function in [a functional] area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(F)(2). For "mild," "moderate," or "marked" limitations, a claimant's ability to function as such is "slightly limited," "fair," or "seriously limited," respectively. *Id.*

(Tr. 21.) She explained that these functional limitations "correspond[] to the moderate rating[s]" she found at step three regarding his ability to (1) interact with others, (2) adapt or manage himself, and (3) concentrate, persist, or maintain pace. (Tr. 23-24.)

In making her determination, as is further set forth below, the ALJ sufficiently explained her evaluation of the supportability and consistency factors for each medical source. Mindful of the threshold for substantial evidence—"only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"—a review of the record demonstrates that substantial evidence supports the Commissioner's decision. *Biestek*, 587 U.S. at 103 (citation modified). Remand is not required.

### A. The ALJ Adequately Considered the Consistency and Supportability of Dr. Mehl's Opinion.

Dr. Mehl opined that Edward K. had marked limitations in his abilities to interact with others and to "[r]espond appropriately to usual work situations and to changes in a routine work setting," a limitation of unknown magnitude in concentrating and maintaining focus, and no limitation in understanding, remembering, and carrying out instructions. (Tr. 307-08.)

In terms of supportability, the ALJ sufficiently addressed this factor by explaining that Dr. Mehl provided only "*some* explanation in support of his opinion." (Tr. 22, 25 (emphasis added).) *See* 20 C.F.R. § 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinion(s) . . . will be."). She considered that Dr. Mehl noted that Edward K. was "a bit defensive" and

"somewhat resistant" during his examination. (Tr. 303.) Dr. Mehl also reported that Edward K. had very poor eye contact, a flat affect, and was irritated, tense, and depressed. (Tr. 304.) But Dr. Mehl noted that Edward K. was well-groomed and had normal speech and thought processes. (*Id.*) He also observed that Edward K. had above average cognitive functioning, fair insight, and good judgment. (*Id.*) Moreover, Dr. Mehl logged that Edward K. was coherent, goal-directed, and cooperative. (Tr. 303-04.) Considering his finding that Edward K. had no limitation in his ability to remember information, Dr. Mehl paradoxically noted that Edward K. had mildly impaired recent and remote memory skills due to anxiety since he could only repeat (1) one out of three objects after a five-minute delay, (2) a six-digit number forward and (3) a three-digit number backward. (Tr. 304.) Additionally, Edward K. "reported being independent in dressing, bathing, and grooming," "able to manage his own money and use cash or debit cards as needed," and "able to drive when necessary." (Tr. 24 (citing Tr. 305).)

Turning to consistency, the ALJ found that Dr. Mehl's opinion was unpersuasive because the "marked limitations are inconsistent with the evidence of record." (Tr. 22, 25.) Her explanations were enough under the governing regulation. *See* 20 C.F.R. § 416.920c(c)(2) ("The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."). She acknowledged that the record indicates Edward K. "has a history of violence toward others and a history of incarceration." (Tr. 25.) However, she considered that Edward K. had "been repeatedly described as cooperative" and "reported being able to interact with his mother and stepfather," "spend time with

others in person," and "attend counseling sessions." (Tr. 23-25 (citing Tr. 166, 168-69, 172, 326, 331, 337, 342, 347, 351.).). Accordingly, the ALJ concluded that limitations "of no more than moderate [are] consistent with the evidence of record." (Tr. 25.) This countervailing evidence was appropriate to consider under the regulations pertaining to the two functional areas at issue, which instruct ALJs to factor, among other things, a claimant's ability to cooperate, initiate or sustain conversation, understand and respond to social cues, set realistic goals, maintain personal hygiene, wear appropriate attire, and make plans independently. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(E)(2), (4).

### B. The ALJ Adequately Considered the Consistency and Supportability of CRNP Paster's Opinion.

CRNP Paster reported on a check box form[13] that Edward K. would be unable to satisfactorily complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, or deal with normal work stress. (Tr. 376.) Additionally, she claimed that he would perform at less than an eighty percent efficiency level in comparison to an average worker and would be absent from work four or more days a month. (Tr. 377.) According to CRNP Paster, Edward K. had a marked limitation in maintaining social functioning and moderate limitations in maintaining concentration, persistence, or pace; responding appropriately to changes in a work setting; and performing activities of daily living. (Tr. 376.)

[13] Forms like this, where a physician's only obligation is to "check a box or fill in a blank[,] are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993).

Like Dr. Mehl, the ALJ found CRNP Paster's opinion somewhat supported. (*See* Tr. 20, 22-26.) The ALJ's explanation suffices to meet the requirements of 20 C.F.R. § 416.920c(c)(1). CNRP Paster's 2023 treatment notes log that Edward K. was receiving individual therapy for symptoms of violence toward others, depression, and anxiety and that he reported getting anxious and overwhelmed when out in public. (Tr. 330-31, 341.) In December 2023, CRNP Paster noted Edward K.'s anxious mood, flat affect, and poor eye contact. (Tr. 341-42.) The following month, Edward K. told her that he was still experiencing significant depression and anxiety and did "not like being out in public, keeping him mostly homebound." (Tr. 346-47.) However, following a medication adjustment, CRNP Paster observed that his symptoms started to improve. (*See* Tr. 355-56.) In April 2024, she noted that his eye contact was "fair" and his mood was "not bad." (Tr. 359-60.) Edward K. reported walking at a fitness center's track for exercise, that it helped to have a routine and "somewhere to be," and that he "would like to see his family more." (*See* Tr. 359.) Two months later, CRNP Paster recorded that he had fair eye contact, "calm and fine" mood with appropriate affect, and normal thought processes. (Tr. 368.) She also stated that he continued to experience "some benefit" with his medication regimen. (Tr. 368.) Edward K. reported doing "ok" and said that he was looking forward to spending time with his mother and stepfather if they visited him for his birthday. (Tr. 367.) CRNP Paster consistently noted that Edward K. was cooperative, actively participated in therapy, had normal speech, had logical and goal-directed thought processes, and desired to improve his mental health. (Tr. 337, 342, 347, 351, 356, 360, 364, 368.)

Regarding consistency, the ALJ found that CRNP Paster's opinion was "inconsistent" with Dr. Mehl's mental status findings, "such as well groomed, normal speech, normal thought processes, intact attention and concentration with ability to perform serial 7's with no errors, mildly impaired recent and remote memory skills, above average cognitive functioning, and good judgment." (Tr. 26 (citing Tr. 299-313).) The ALJ also noted that Edward K. had reported visiting with family, regularly attending therapy, going on walks, and spending time with others in person. (Tr. 23-24 (citing Tr. 168-69, 172, 192-93, 196).) No more was required for the ALJ's explanation to address consistency under 20 C.F.R. § 416.920c(c)(2). *See Zaborowski*, 115 F.4th at 639-40.

**C. The ALJ Adequately Considered the Consistency and Supportability of the State Agency Psychological Consultants' Opinions.**

Drs. Plowman and Gavazzi opined that Edward K. had mild limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace in addition to providing narrative discussions of his specific functional limitations. (Tr. 57, 65.) Both also concluded that Edward K. had moderate limitations in interacting with others and adapting or managing himself. (*Id.*)

As to supportability, remand is not required just because the ALJ used the word "inconsistent" instead of "unsupported" to describe whether the state agency consultants had adequately articulated support for their own opinions regarding Edward K.'s limitations. *See Zaborowski*, 115 F. 4th at 639. The ALJ found that while Dr. Plowman and Dr. Gavazzi "provided explanation in support of their opinions," "the limitations they provided in the *narrative* are inconsistent with the limitations noted in each area of

functioning/domain." (*See* Tr. 24-25 (emphasis added).) For example, the ALJ highlighted that "the moderate limitation found in the ability to interact with others is inconsistent with the work-related limitations found." (Tr. 25.) Indeed, the ALJ noted Dr. Plowman had opined that Edward K. could "interact appropriately with others across settings" and "work in proximity to others." (Tr. 59.) Likewise, Dr. Gavazzi had opined that Edward K. could "maintain socially appropriate behavior" and "behaves predictably in most social situations." (Tr. 67.)

As for consistency, the ALJ also found the prior administrative medical findings were inconsistent with the record evidence. (Tr. 25.) Specifically, the ALJ found that a mild limitation in Edward K.'s ability to concentrate, persist, or maintain pace was inconsistent with evidence "revealing lack of concentration at times," supporting "additional limitations such as a restriction to work not at an assembly line or production rate pace or involving any strict production quotas." (Tr. 25 (citing Tr. 330, 335, 351, 355, 359, 363).) The ALJ also considered Edward K.'s function reports where he had stated he has issues completing tasks and concentrating. (Tr. 24 (citing Tr. 167-69, 189, 194).) Additionally, the ALJ found that Edward K.'s "history of violent behavior noted in the treatment records" indicated "greater limitations" than Dr. Gavazzi and Dr. Plowman proffered regarding his ability to interact with others. (Tr. 25 (citing Tr. 255-57, 317, 319, 325).)

Edward K. takes issue with this last finding, arguing that the "greater limitations" language necessarily means that the ALJ determined he had a marked or extreme limitation in his ability to interact with others. (ECF 9 at 6-8; ECF 11 at 1-2.) This is not so.

First, the ALJ explicitly determined that Edward K. had a moderate limitation in this functional area at step three. (Tr. 20.) During her RFC assessment at step four, the ALJ reiterated that the work-related functional limitations she found in his ability to interact with others—that he was only "capable of tolerating occasional interaction with supervisors and coworkers and no interaction with the general public"—"correspond[ed] to the *moderate* rating in the interact with others criterion." (Tr. 23-24.) Read in context, the ALJ's reference to "greater limitations" refers to the limitations Drs. Gavazzi and Plowman "provided in the narrative" discussion (*see* Tr. 25), which "describes how the evidence supports each conclusion" regarding the "mental [RFC]." (Tr. 59, 67.)[14] There is therefore no discrepancy in the ALJ's reasoning that renders her "explanation for her dispositive conclusions regarding [Edward K.'s] functioning" unclear. (ECF 9 at 7.)

[14] Edward K.'s argument conflates the ALJ's step four determination with her step three analysis. The five-point-scale degree-of-severity determinations (*e.g.*, "marked") apply to step three, while the RFC finding at step four "requires a more detailed assessment" that "must be expressed in terms of [itemized] work-related functions" contained in the four broad functional areas. *See* SSR 96-8P, 1996 SSR LEXIS 5, at *13, *17 (July 2, 1996); 20 C.F.R. § 416.945(c). *Cf.*, *Hess*, 931 F.3d at 209 ("[N]o incantations are required at steps four and five simply because a particular finding has been made at steps two and three. Those portions of the disability analysis serve distinct purposes and may be expressed in different ways.").

Thus, although the ALJ agreed with Drs. Plowman and Gavazzi that Edward K. had a moderate limitation in his ability to interact with others, there is no inherent conflict in her determination that the record supported more work-related functional limitations than those described in the prior administrative medical findings. Indeed, the ALJ's determination that Edward K. can tolerate "no interaction with the general public" contradicts Dr. Plowman's opinion that Edward K. "*can* interact appropriately with others across settings," as well as Dr. Gavazzi's findings that Edward K. is *not* significantly limited in his ability to interact appropriately with the general public and "behaves predictably in most social situations." (Tr. 21, 59, 67.)

### D. The ALJ Properly Evaluated the Medical Opinion Evidence.

Finally, there is no merit to Edward K.'s "lay opinion" argument.[15] (*Id.* at 9-10.) He complains that "the ALJ's dispositive conclusions regarding [Edward K.'s] ability to interact with others in the workplace were improperly based on the ALJ's lay perception of the evidence." (*Id.* at 9.) For claims filed after March 27, 2017—like Edward K.'s (Tr. 54)—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), *including those from [a claimant's] medical sources*." 20 C.F.R. § 416.920c(a) (emphasis added); *see Chung v. Comm'r Soc. Sec.*, No. 24-1974, 2025 U.S. App. LEXIS 8319, at *6 (3d Cir. Apr. 9, 2025).

Edward K. argues that the Third Circuit has cautioned ALJs against "substituting their lay opinions for the medical opinion of an expert," particularly where the expert has treated the claimant and "the case involves a mental disability." *See Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000) (citation modified). However, *Morales* is distinguishable from

[15] Edward K. primarily cites to out-of-circuit case law to support his contention that the ALJ "was not qualified to overrule Dr. Mehl's professional assessment of his own observations without pointing to some other [medical] evidence." (*See id.*) *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Salmond v. Berryhill*, 892 F.3d 812, 818 (5th Cir. 2018); *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003); *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). However, these decisions are not binding. *See Roberts v. Lau*, 90 F.4th 618, 630 n.10 (3d Cir. 2024) (noting that unpublished and out-of-circuit opinions are merely persuasive), *cert. denied sub nom. Baer v. Roberts*, 145 S. Ct. 414 (2024); *see also United States v. Maury*, 695 F.3d 227, 259 n.2 (3d Cir. 2012) ("Of course, the decisions of other circuits, while persuasive, are not binding on the district courts in this Circuit."). Because precedential opinions resolve this issue, the Court need not address the out-of-circuit cases that Edward K. cites. *Id.*

this case and, importantly, predates the 2017 amendments to the governing regulations. Even if Dr. Mehl had treated Edward K., the ALJ was under no obligation to give more weight to his medical opinion for that reason alone. *See* 20 C.F.R. § 416.920c(b)(2); *Zaborowski*, 115 F.4th at 639 (noting that an ALJ "may consider many factors" when determining how persuasive a medical opinion is "yet base a decision on just one or two" factors). But it was CRNP Paster, *not* Dr. Mehl, who treated Edward K.[16] (*See* Tr. 333-72.)

Further, in *Morales*, the Third Circuit faulted the ALJ for rejecting medical opinions based solely on his credibility determinations and speculation, not objective medical evidence. *See* 225 F.3d at 317-20. In contrast, here, the ALJ properly discredited Dr. Mehl's opinion "based on the objective medical evidence contained in the psychotherapy treatment notes." *See Torres v. Barnhart*, 139 F. App'x 411, 414-15 (3d Cir. 2005) (distinguishing *Morales*). (*See* Tr. 25 (citing Tr. 326, 331, 337, 342, 347, 351).) Likewise, the ALJ credited other medical evidence when discrediting CRNP Paster's opinion as to his work-related social functioning limitations. (*See* Tr. 23-26 (citing Tr. 303-04, 326).) Doing so was particularly appropriate since the ALJ found that both Dr. Mehl and CRNP Paster had only provided *some* support for their opinions. (Tr. 25-26.) *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (noting that a medical opinion "may be afforded more or less weight depending upon the extent to which supporting

[16] To the extent that Edward K. is arguing that the ALJ should have considered CRNP Paster's doctor-patient relationship with Edward K when evaluating her medical opinion, the ALJ only needed to weigh the supportability and consistency factors under the applicable regulations. *See Zaborowski*, 115 F.4th at 639.

explanations are provided" (citation modified)). The ALJ was the sole person responsible for assessing Edward K's RFC based on all the record evidence, *see* 20 C.F.R. §§ 416.945(a), 416.946(c), and she did not need to rely on a perfectly matching medical opinion to do so. *See Chandler*, 667 F.3d at 361-62; *see also Zirnsak*, 777 F.3d at 615 (noting that where a limitation is "supported by medical evidence but opposed by other record evidence, the ALJ has discretion" on whether to include that limitation in the RFC (citation modified)). Remand is not required based on this argument.

## IV. CONCLUSION

Upon review of the record, substantial evidence—"such relevant evidence as a reasonable mind might accept as adequate"—exists to support the ALJ's decision and conclusion that the medical opinions and prior administrative medical findings were not persuasive. *Biestek*, 587 U.S. at 103. The threshold for "evidentiary sufficiency is not high." *Id.* Because Edward K. has not shown that any of his complaints about the ALJ's consideration of the medical opinions, prior administrative medical findings, or other record evidence would have changed the outcome of his case under the governing regulations, remand is not required to further consider it. *Rutherford*, 399 F.3d at 553. Edward K.'s request for review is **DENIED** and the Commissioner's final decision is **AFFIRMED**.

An appropriate Order follows.